# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Juan Lopez,

    Petitioner

v.

Todd Blanche, et al.,

    Respondents

Case No.: 2:26-cv-00281-JAD-EJY

**Order Granting Habeas Petition, Denying as Moot Motion for Temporary Restraining Order, and Vacating May 12, 2026, Hearing**

[ECF Nos. 28, 29]

Petitioner Juan Lopez is a Cuban citizen who arrived in the United States in 1995 and was ordered removed in 2003.  He was detained for 90 days in 2008, but he was released from custody because Immigration and Customs Enforcement[1] (ICE) agents were unable to secure his removal to Cuba.  But on January 7, 2026, ICE detained Lopez, and after a series of transfers to Arizona, Louisiana, and Florida, he is now in custody at the Nevada Southern Detention Center.

In February 2026, Lopez filed a pro se petition for a writ of habeas corpus seeking his release from custody.  The court appointed counsel, who filed a first amended habeas petition and a motion for a temporary restraining order seeking Lopez's immediate release.  Lopez argues that ICE has detained him for too long without showing that he is likely to be removed in the reasonably foreseeable future, that the government violated its own regulations when it re-detained him without following established procedures for revoking his order of supervision, and that ICE's policy of removing noncitizens to a third country without adequate notice or a hearing violates his due-process rights.  Lopez's habeas petition and TRO motion are fully briefed.

---

[1] ICE has had different institutional names throughout the years.  To simplify matters, I refer to the agency with the power and authority to remove noncitizens as ICE even if it may have been called something else when Lopez was ordered removed.

I grant Lopez's habeas petition. Lopez has been detained for more than six months under his decades-old order of removal. He has shown that there is no good reason to believe that his removal is forthcoming, and the government has failed to present any competent evidence suggesting otherwise. Indeed, the government's response argues that Lopez must remain detained under a statutory provision that applies only to noncitizens who are awaiting a removal decision, but Lopez has been subject to a removal order for more than 20 years. Lopez has also shown that ICE failed to follow its own regulations when it arrested him and deprived him of the process that should have accompanied his re-detention. And Lopez has demonstrated that ICE's third-country-removal policy violates the Fifth Amendment's due-process clause.

So I order Lopez's release, subject to the conditions of his preexisting order of supervision. I also prohibit the respondents from re-detaining Lopez absent a demonstrable change in circumstances in ICE's ability to remove him. And I prohibit the respondents from removing Lopez to an alternative third country without first providing adequate notice and a meaningful opportunity to seek any available relief for that removal. Finally, because resolving the petition affords Lopez the relief he seeks, I deny as moot his motion for a temporary restraining order and vacate the motion hearing scheduled for May 12, 2026.

## Background

Juan Lopez is a citizen of Cuba who was paroled into the United States via Miami, Florida, on December 27, 1995.[2] He was issued a removal order on August 20, 2003.[3] On April 4, 2008, ICE detained Lopez and released him 90 days later under an order of supervision.[4] On

---

[2] ECF No. 32-1 at 4.

[3] *Id.*

[4] *Id.*

2

January 7, 2026, the Nevada Department of Corrections released Lopez into ICE custody following his incarceration for a state criminal conviction.[5]

Lopez filed a habeas petition seeking release from custody on February 5, 2026.[6]  On February 10, 2026, I appointed the Federal Public Defender's Office (FPD) to represent him and prohibited the government from transferring Lopez out of this district while his petition was pending.[7]  A month later, the FPD informed the court that Lopez had been transferred to Arizona before my order prohibiting transfer was entered and was transferred to various other facilities since then.[8]  I ordered Lopez returned to the district and, on April 2, 2026, the government complied.[9]

Lopez filed his counseled amended petition on April 16, 2026, and filed a TRO motion on April 22, 2026.[10]  He seeks release from custody under the Supreme Court's decision in *Zadvydas v. Davis*,[11] which sets limits on the prolonged detention of noncitizens who are subject to final removal orders.  He also contends that he was arrested by ICE without being notified that his supervision was revoked, violating agency regulations.  And he contends that he is likely to be removed to a country not listed on his removal order, and the government's policies to effectuate those removals violate the Fifth Amendment's due-process clause.  The government

---

[5] *Id.*

[6] ECF No. 1.

[7] ECF No. 3.

[8] *See* ECF Nos. 9, 27, 18.

[9] ECF Nos. 22, 26, 27.

[10] ECF Nos. 28, 29.

[11] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

responds solely that Lopez is detained under 8 U.S.C. § 1226(c)—a statute that applies only to noncitizens who are in removal proceedings.[12]

## Discussion

**A.      This court has jurisdiction over Lopez's claims.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[13]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under United States immigration laws.[14]

**B.      Lopez has shown that he is entitled to relief on his prolonged-detention claim.**

*1.      The government has authority to detain noncitizens after they have been ordered removed.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[15]  During that 90-day period,

---

[12] ECF No. 32.

[13] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[14] *Zadvydas*, 533 U.S. at 687; *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[15] 8 U.S.C. § 1231(a)(1)(B).

detention is mandatory.[16]  The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy"[17] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[18]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[19]

### 2.       *The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.*

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[20]  To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[21]  It determined that six months of post-removal-period detention is presumptively reasonable.[22]  But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that

---

[16] 8 U.S.C. § 1231(a)(2)(A).

[17] *Zadvydas*, 533 U.S. at 682.

[18] 8 U.S.C. § 1231(a)(6).

[19] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[20] *Id.* at 690.

[21] *Id.* at 699.

[22] *Id.* at 701.

5

his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[23]  If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[24]  And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[25]

### 3.    *Lopez has shown good reasons to believe that he will not be removed in the reasonably foreseeable future, and the government has not rebutted that showing with any evidence of likely removal.*

Lopez has been detained for seven months.  He served his 90-day mandatory detention period in 2008, and he has been detained for 121 days since his arrest in January 2026.[26]  So Lopez bears the initial burden of showing that there are "good reason[s] to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[27]  To meet that burden, Lopez argues that he has been subject to an order of supervision for approximately 23

---

[23] *Id.*

[24] *Id.*

[25] *Id.* (cleaned up).

[26] Several courts have found that prior detention periods must be counted; otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*.  *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Wash. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals").  I agree with the reasoning of those courts.  *Zadvydas* presumed that detention following removal could reasonably last six months.  If, as here, the noncitizen has been previously detained under the same removal order, the government cannot simply restart the six-month clock whenever it chooses to re-detain him.  So I consider prior detention periods in my analysis.

[27] *Zadvydas*, 533 U.S. at 701.

6

years and ICE has been unable to effectuate his removal during that time.  The record also reflects that, at one point, ICE was attempting to remove Lopez to Mexico,[28] indicating that it believed removal to Cuba was "impracticable, inadvisable, or impossible."[29]  Lopez's removal to Mexico evidently did not materialize.  I find that Lopez's allegations are sufficient to establish good reason to believe that he is not likely to be removed in the reasonably foreseeable future.

The government does not meet its shifted evidentiary burden to show that Lopez's removal is foreseeable.  Indeed, it doesn't engage in the *Zadvydas* analysis at all.  Instead, it contends that Lopez is subject to mandatory detention under 8 U.S.C. § 1226(c) because he was ordered removed based on his convictions for crimes involving moral turpitude.[30]  But, as the government itself explains, "8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of noncitizens who are in removal proceedings."[31]  That detention authority "applies throughout the administrative and judicial phases of removal proceedings"[32] and ends when "removal proceedings have concluded."[33]  When a noncitizen becomes subject to a final removal order, detention authority shifts to 8 U.S.C. § 1231(a), and the *Zadvydas* framework for prolonged detention applies.[34]  It is undisputed that Lopez is subject to a removal order that became final decades ago, so his detention is governed by § 1231(a).  Because the government doesn't make any argument, let alone present evidence to show, that Lopez's removal to Cuba or

---

[28] *See* ECF No. 28 at 2.

[29] 8 U.S.C. § 1231(b)(1)(C)(iv).

[30] ECF No. 32 at 2–3.

[31] *Id.* at 2 (citing 8 U.S.C. § 1226; *Demore*, 538 U.S. at 530).

[32] *Avilez v. Garland*, 69 F.4th 525, 535 (9th Cir. 2023).

[33] ECF No. 32 at 2 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 303–06 (2018)).

[34] *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008).

any other country is significantly likely in the reasonably foreseeable future, I grant his petition on this claim and order his release.

**C.    Lopez has shown that ICE arrested him without following its own re-detention regulations.**

Lopez also contends that ICE arrested him in a manner that violates its own regulations. To revoke a noncitizen's order of supervision after his release, the government must follow procedures established in the Code of Federal Regulations.  8 U.S.C. § 241.4 dictates that release may be revoked if the noncitizen "violates any condition of release" or when "appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]."[35]  Section 241.13 permits revocation of release if, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."[36]  If ICE decides to revoke release for any of these reasons, it must provide the noncitizen with notice "of the reasons for revocation" and "an initial informal interview promptly after his . . . return to [ICE] custody to afford [him] the opportunity to respond to the reasons for revocation stated in the notification."[37]

Lopez alleges that ICE didn't properly revoke his order of supervision.  "It is a well-known maxim that agencies must comply with their own regulations."[38]  And, as other district courts have found, ICE's re-detention regulations were intended "to provide due process protections to noncitizens following the removal period as they are considered for continued

---

[35] 8 C.F.R. § 241.4(l)(2)(iii).

[36] 8 C.F.R. § 241.13(i)(2).

[37] 8 C.F.R. §§ 241.4(l)(1); 241.13(i)(3).

[38] *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010).

detention, release, and then possible revocation of release."[39]  It's undisputed that those regulations were not followed here.  So I join the growing number of courts that have concluded that the government's failure to abide by its own regulations when arresting a noncitizen warrants his release.  I thus grant Lopez's habeas petition on this ground, too, and I order his release on the conditions in his preexisting order of supervision.

**D.    Lopez has shown that the government's third-country-removal procedures violate due process.**

> ### *1.    The government's policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.*

Once it has been determined that a noncitizen is to be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to.  The first choice is a country "to which the [noncitizen] wants to be removed."[40]  If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen entered the United States, the noncitizen's last country of residence, the country in which the noncitizen was born, and others.[41]  If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept" him.[42]  Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

---

[39] *See, e.g.*, *Ghafouri v. Noem*, 2025 WL 3085726, at *4 (S.D. Cal. Nov. 4, 2025) (quoting *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

[40] 8 U.S.C. § 1231(b)(2)(A).

[41] 8 U.S.C. §§ 1231(b)(2)(E)(i–vi).

[42] 8 U.S.C. § 1231(b)(2)(E)(vii).

There is one statutory restriction on third-party removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[43]  And the United Nations Convention Against Torture (CAT), ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured.  Normally, a noncitizen raises CAT protections at or directly following his initial removal proceedings.  It appears that no immigration statute or regulation addresses how a noncitizen may raise CAT challenges after ICE determines that deportation to the country on his removal order is impracticable and instead chooses to pursue a third-country removal.

In early 2025, ICE tried to fill that statutory gap.  It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the Department of State, ICE need not give any notice or opportunity to be heard to noncitizens who are being removed to that country.[44]  In all other cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[45]  ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours'

---

[43] 8 U.S.C. § 1231(b)(3)(A).

[44] ECF No. 28-4.

[45] *Id.*

10

notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[46]

After the notice of removal is served, the ICE officer "will not affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations (ERO) division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[47]  If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[48]  If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT for the country of removal.[49]

### 2.    *ICE's third-country policy violates due process, so any attempt to remove Lopez to a third country must be preceded by notice and a meaningful opportunity to be heard.*

Lopez contends that ICE's third-country-removal policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause.[50]

---

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] ECF No. 28 at 20–21.  Lopez also challenges the policy under the Administrative Procedure Act (APA).  In that claim, he essentially argues that the government violated the APA by using a procedure that violates due process.  *See id.* at 20.  Because Lopez's due-process claim on its own justifies release, I do not separately consider whether the government has violated the APA.

11

"The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[51] The "fundamental features of due process" are notice and an opportunity to be heard.[52]

The Ninth Circuit has not expressly ruled on what process is due to noncitizens faced with third-country removal. But it has come close. In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[53] It explained that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."[54] And in the unpublished case of *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[55]

District courts have extrapolated these holdings to find that adequate due process requires ICE to (1) provide notice, (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts" if the answer to that question is

---

[51] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[52] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[53] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

[54] *Id.*

[55] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (unpublished) (cleaned up).

yes, and (4) provide "adequate time to prepare and file a motion to reopen[.]"[56]  Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[57]  District courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[58]

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide adequate due process to a noncitizen who may be removed to that country.  Notice, let alone an opportunity to be heard, is not available to a noncitizen in that situation.  And ICE's second scheme doesn't fare much better.  Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal, and that notice explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other protections if he fears removal to that third country.  Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless a USCIS officer determines, through an unexplained process, that the noncitizen would be likely

---

[56] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen*, 796 F. Supp. 3d at 727.

[57] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country).

[58] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

to prove that any of those protections applies.  So this process does not comport with the fundamental requirements of due process.

I also find that Lopez is likely to face a due-process violation from this policy.  The government appeared poised to remove Lopez to a third country (Mexico) once, and there's no indication that his removal to Cuba is likely or reasonably foreseeable.  I thus grant Lopez's petition with respect to his third-country-removal claims and prohibit the federal respondents from rearresting Lopez with the intention of removing him to a third country unless they comply with the notice-and-hearing requirements established above.

### Conclusion

IT IS THEREFORE ORDERED that petitioner Juan Lopez's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 28] is GRANTED**.  Petitioner **Juan Lopez must be released from detention within three days, subject to the conditions of his preexisting order of supervision.**

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Lopez's release at least 24 hours before the release is set to occur, and

(2) within four days of this order, notice that Lopez's release was effectuated.

IT IS FURTHER ORDERED that **the federal respondents are enjoined from re-detaining Juan Lopez absent proof of changed circumstances making his removal reasonably foreseeable.**

IT IS FURTHER ORDERED that the **federal respondents are enjoined from removing Juan Lopez to any country not listed on his removal order unless it first complies with the notice-and-hearing requirements detailed in this order**.

14

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

IT IS FURTHER ORDERED that Lopez's motion for a temporary restraining order **[ECF No. 29] is DENIED** as moot. **The hearing on that motion, currently set at 10:00 a.m. on May 12, 2026, is VACATED.**

The Clerk of Court is directed to SEND a copy of this order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
May 8, 2026

15